## JESUS LARA v. THE STATE.

### No. 3311.   Decided May 30, 1906.

**1.—Murder in Second Degree—Affidavits on Appeal—Practice.**

Upon appeal from a conviction of murder in the second degree, affidavits filed by appellant in regard to the order of the trial court overruling motion for new trial and matters connected with it, cannot be considered, and a motion to strike them from the record was sustained.

**2.—Same—Motion for New Trial—Controverting Affidavits—Notice.**

Where defendant attached to his motion for new trial certain affidavits in which he set out the fact that the interpreter had incorrectly given the testimony of defendant during the trial and which seemed to have referred especially to a certain expression testified to by defendant as used by deceased; and the State thereupon filed a controverting affidavit as to the meaning of said expression, and before the motion for new trial was overruled; held, the defendant had legal notice of said last affidavit and could not be heard to complain that he had no actual notice of the filing thereof.

**3.—Charge of Court—Manslaughter—Insulting Conduct to Female Relative.**

Where upon trial for murder the evidence showed that the insulting language employed by deceased was intended as an insult to the defendant and not to his female relatives, there was no error in not submitting the law on this phase of the case as to adequate cause.

**4.—Same—Charge of Court—Self-Defense.**

Upon a trial for murder where the State's theory showed a killing with malice, and the theory of the defense was that of self-defense, both of which theories were submitted to the jury under proper instructions, there was no error.

Appeal from the District Court of Uvalde.   Tried below before the Hon. R. H. Burney.

Appeal from a conviction of murder in the second degree; penalty, eight years imprisonment in the penitentiary.

The opinion states the case.

*L. Old,* for appellant.—On question of charge on adequate cause: Bracken v. State, 29 Texas Crim. App., 368; Nix v. State, 7 Texas Ct. Rep., 922; Ware v. State, 15 id., 402.   On question of definition of meaning of term:   Crist v. State, 21 Texas Crim. App., 367; Bigham v. State, 36 Texas Crim. Rep., 459; Taylor v. State, 38 id., 244.

*J. E. Yantis,* Assistant Attorney-General, and *C. C. Harris,* for the State.

DAVIDSON, PRESIDING JUDGE.—This conviction is for murder in the second degree; eight years in the penitentiary fixed as the punishment.

Appellant has filed affidavits in this court in regard to the order of the court overruling motion for new trial and matters connected with it.   These affidavits cannot be considered.   All these matters should have been attended to in the trial court.   One of these affidavits

is to the effect that the motion for new trial was argued on the 7th of the month; and the court took the matter under advisement and overruled it on the 17th. The record shows the motion for new trial to have been overruled on the 17th. Appended to his motion for new trial are some affidavits rather indefinite in terms, to the effect that the interpreter had incorrectly given the testimony of appellant in the trial court. We are led to believe, though it is not stated, that it referred to an expression used by appellant, in which the statement of facts shows that deceased had stated to a brother of appellant that he had whipped one or more of his brothers and intended to whip appellant and then used a vulgar expression, which appellant contends means that he intended to have carnal intercourse with the remainder of the family, which included his father, mother and sisters. On the 16th, the day before the motion for new trial was overruled, the State filed a controverting affidavit, to the effect that the same word used with reference to appellant's contention of carnal intercourse, was used with reference to whipping defendant, and in regard to the fact that he had whipped one or two of appellant's brothers. It is a Mexican word, and spelled in that language, *chingue*. In the controverting affidavit this is interpreted to mean that he had whipped one or two of the brothers of defendant, intended to whip defendant, and then whip the Lara family. This affidavit was filed before the overruling of the motion for new trial. Appellant contends that he had no actual notice of the filing of this controverting affidavit. We are of opinion that this would make no difference. It was filed in the case before the motion for new trial was overruled. He is required under the law to take notice of papers filed in a suit pending its disposition. He must be present when the motion for new trial is overruled and sentence is pronounced against him. As there is nothing to indicate the contrary, we suppose he was present, as the law required him to be, when the motion for new trial was overruled. But in any event, affidavits of this character cannot be filed as original papers in this court. The motion of State's counsel to strike out these affidavits is sustained.

There are no bills of exception in the record. There is nothing in the contention of appellant in regard to the charge of the court on murder in the second degree to wit: the court charged the jury that if appellant killed deceased in a sudden transport of passion, without adequate cause, etc. The court defined manslaughter and adequate cause. But appellant insists that the charge on manslaughter is not sufficient, because it did not charge the jury that insulting conduct towards the female relatives of appellant would constitute adequate cause. This arises from an expression set out in the statement of facts, detailed by appellant himself in his testimony, as communicated to him by his brother, as follows: Deceased said to the brother, Pedro, "I have whipped you, and have whipped your brother Cerio; and I am going to whip Jesus (meaning defendant) and fuck the whole Lara family." It is contended that by the use of this vulgar word, appellant used insulting language and conduct

towards the female relatives of appellant. We do not so understand this language, or that it was intended to convey the idea that he was going to have carnal intercourse with the female relatives, or that it intended to reflect upon them in any way. Appellant's theory seems to be that this intended to convey the idea that the female relatives of his family were prostitutes. This language, in our judgment, was not used for that purpose, and does not convey that idea. It was a term used, if used by him at all, to insult Pedro, to whom it was used, and conveyed the idea of enmity and ill will and the purpose of bringing on a difficulty with him. In the motion for new trial the controverting affidavits make it appear that the vulgar word there used means, to whip, or beat, or chastise, and in the connection used did not mean or convey the idea of carnal intercourse, either willingly or unwillingly with any female relative of appellant. Therefore, we believe the court did not err in submitting this phase of adequate cause and the law of manslaughter from that standpoint.

Nor was the charge of the court on self-defense too restrictive or detrimental to appellant's right, nor did it in any way impair any theory of self-defense. It applied rather pertinently and concisely the law to the facts relied upon by appellant to show self-defense. There were two theories in the case, one that showed murder, a seeking of deceased by appellant and his friend, Carozalis, that when Carozalis called him at his residence, he immediately armed himself and went with Carozalis to where deceased was. Not a word was said between them from the time he was called until he reached deceased, and he immediately shot and killed him. Appellant's theory was that he went to where deceased was, and when he met him deceased struck him over the head with a bar of iron and knocked him down, and that he (appellant) shot while lying on the ground at and killed deceased who was standing over him; that deceased also shot at him while lying on the ground. These two theories were submitted to the jury, and they discarded his testimony, and found that for the State to be the truth.

Finding no reversible error in the record, the judgment is affirmed.

*Affirmed.*

Brooks, Judge, absent.